LEVI M. ALGASE, Respondent, v. HORSE OWNERS' MUTUAL INDEM‧ NITY ASSOCIATION of Rochester, N. Y., Appellant.

*Insurance on the life of a horse — evidence as to a mortgage of the horse — letter of an officer of the company as to proof of loss, admissible — effect of a release by the owner to the party killing the horse.*

Upon the trial of an action brought on a policy of insurance, it is proper to receive in evidence, on the part of the plaintiff, portions of the defendant's answer.

In an action brought on a policy of insurance issued by the defendant upon the life of a horse, where the answer alleges that a loan was made by the plaintiff (the assignee of the policy) to the owner of the horse, and that a chattel mortgage was given upon the horse to secure its repayment, it is proper to receive evidence that the plaintiff held as security for the indebtedness due to him from the owner of the horse a mortgage upon the horse, and also to receive evidence as to the extent to which it remained unsatisfied and unpaid.

When, upon the trial of such an action, evidence has been introduced tending to show that proofs of loss have been furnished to the insurance company, it is proper to receive in evidence, in corroboration thereof, a letter of an officer of the company, which contains the statement that the company has " once

decided against the claim as being one of gross and willful carelessness," and which further states "I shall advocate its payment."

A corporation issued its certificate of indemnity and entered into a contract to pay a certain sum in case of the death of a horse, unless "caused by willful neglect or carelessness." The death of such horse was caused, without the negligence or carelessness of its owner or his assignee, by the negligence of a railroad company, to which company the owner of the horse, subsequent to the assignment and prior to the commencement of the action brought by his assignee upon the certificate of insurance, had given a release.

*Held,* that the obligation assumed by the insurance company in its certificate at the time of the death of the horse could be enforced against such company by the assignee of the beneficiary named therein, in the absence of proof that such assignee aided the owner of the horse in presenting his claim to the railroad company or in obtaining a settlement with it for the damages which he had sustained, or had in anywise consented to a discharge of the mortgage which he held upon the horse, or to a liquidation of the certificate of insurance which was collateral thereto.

APPEAL by the defendant, the Horse Owners' Mutual Indemnity Association of Rochester, N. Y., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 9th day of November, 1893, upon the report of a referee.

*Babcock, Sperry & Van Cleve,* for the appellant.

*W. D. Edmister,* for the respondent.

HARDIN, P. J.:

On the 16th day of June, 1891, the defendant issued a policy of insurance or indemnity to John T. Brooks upon his horse, wherein the defendant agreed, "upon receiving satisfactory proofs of the death of said animal by disease, accident or broken leg, to pay to the said insured, executors, administrators or assigns, the sum of one hundred dollars from its mortuary fund, within sixty days after the approval of the claim by its executive board." It is averred in the complaint and proven on the trial that on the 13th day of August, 1891, Brooks, by a written indorsement upon the certificate, transferred and assigned to the plaintiff all his " right, title and interest in this certificate, and to all advantages to be derived therefrom," which assignment was in writing and bears date the 13th day of

August, 1891, and was executed in the presence of a witness, and thereafter, on the 15th day of August, 1891, the assignment was approved by Elsbree, the general manager of the defendant. It is averred in the complaint that the plaintiff became the owner and holder of the certificate. The answer of the defendant alleges " that at the time of said alleged indorsement upon said certificate the said plaintiff in this action loaned to the said John T. Brooks the sum of fifty dollars; that as security for the said loan the said John T. Brooks executed and gave a chattel mortgage or bill of sale of or upon said horse mentioned in said certificate, and upon other property, to the said Levi M. Algase, for the purpose of securing the payment to the said Levi M. Algase of said loan of fifty dollars; that for the purpose of further securing the said Algase for said loan said alleged assignment of said certificate was made ; that said consent given by defendant to said indorsement upon said certificate was so given for the purpose and to the extent only of permitting said insurance or certificate of indemnity to continue upon said insured property after the giving of such chattel mortgage or bill of sale, and for no other purpose was such consent given." When the hearing commenced before the referee the defendant's counsel moved to dismiss the complaint on the ground that " it does not state facts sufficient to constitute a cause of action. " The motion was denied and an exception was taken. It is to be observed that the defendant in its motion in no way pointed out any specific defect in the complaint; and we are of the opinion that, considering the allegations of the complaint in connection with the allegations found in the answer, it appeared that a sufficient cause of action was stated, and, therefore, the motion was properly overruled.

In *Olmsted* v. *Keyes* (85 N. Y. 598) it was said: " A life insurance is not like fire insurance, a contract of indemnity, but a mere contract to pay a certain sum of money on the death of a person in consideration of the due payment of a certain annuity for his life. * * * Like every other contract to pay money, such a policy is a chose in action, with all the ordinary incidents of every other chose in action." Upon the hearing before the referee the plaintiff offered in evidence that portion of the defendant's answer which alleged " That at the time of said alleged indorsement upon said certificate the said plaintiff in this action loaned to the said John T. Brooks the

sum of fifty dollars; that as security for the said loan the said John T. Brooks executed and gave a chattel mortgage or bill of sale of or upon the horse mentioned in said certificate." The defendant objected to the admission of the answer in evidence; the objection was overruled and the defendant took an exception.

In *Mott* v. *Consumers' Ice Company* (73 N. Y. 543) it was held: "Where a party gives in evidence an admission in the pleading of his adversary, he is not estopped from questioning a portion thereof which is against him; he is at liberty to use the admission so far as it makes in his favor, and to disprove the residue."

In *Holmes* v. *Jones* (121 N. Y. 461) it was held: "Statements, admissions and allegations in pleadings are always in evidence for all the purposes of the trial; they are before the court and jury, and may be used for any legitimate purpose." In the course of the opinion it was said: "They are made for the purpose of the trial, and are before the court and jury, and may be used for any legitimate purpose."

Our attention is called to *Quinn* v. *Neeson* (21 N. Y. Supp. 106) by the appellant, but the case does not aid its contention, because it appears in the opinion that "it was expressly charged that the answer might be considered by the jury as evidence in the case," although it had not been offered in evidence. We are of the opinion that no error was committed by the referee in receiving that portion of the answer of the defendant in evidence which was offered at the hearing, nor in overruling the defendant's motion to dismiss the complaint on the ground stated. *Williams* v. *Ins. Co. of North America* (9 How. 365); *Peabody* v. *Washington Co. Mutual Ins. Co.* (20 Barb. 341); *Fowler* v. *N. Y. Indemnity Ins. Co.* (26 N. Y. 422) are not applicable to the case before us, as they were cases where the question presented to the court arose upon demurrers.

(2) We are of the opinion that no error was committed in receiving evidence that the plaintiff, at the time of the death of the horse, held security upon the horse for the indebtedness due to him from Brooks. The defendant in its answer had alleged the loan by the plaintiff to Brooks, and the giving of a chattel mortgage upon the horse in question, and it was competent for the plaintiff to prove that the security thus referred to remained " unsatisfied and unpaid "

to the extent of fifty dollars, which is the amount awarded by the referee. The case differs from *Thomas* v. *The Montauk Fire Ins. Co.* (12 N. Y. St. Repr. 738).

(3) Evidence was given that the horse died in November, 1891, after receiving injuries at the railroad crossing of the Delaware and Hudson Canal Company. Immediately after the injuries information thereof was communicated to Mr. Fisher, the agent of the defendant, who went with a veterinary surgeon to see the horse and to take charge of the horse, and the agent continued to visit the horse every day until he died, on the twenty-third day of November; and after the death of the horse Fisher furnished blank proofs of death to Brooks, and they together went to the defendant's attorney's office, and the proofs, after being made out, were left with the agent of the defendant, having been filled out by its attorney, who "was the man that done the business all the way through." The proofs were retained by the defendant, and in the answer of the defendant it is admitted that about December 1, 1891, "defendant was notified of the death of said horse; that about the same day papers purporting to be proofs of loss were given to this defendant, which said defendant still retains." We think the proof relating to the circumstances attending the making out of the proofs and delivery of them to the defendant were properly received, and that the court properly overruled the objection that "there is no proof of any proofs having been submitted to this company." Prior to the commencement of this action application was made to the defendant in respect to the loss claimed to have been sustained, and in reply to the application an officer of the defendant wrote a letter on March 24, 1892, in which it was stated that the company had "once decided against the claim as being one of gross and willful carelessness," although the officer writing the letter volunteered the statement in the following language: "I shall advocate its payment." We think no error was committed in receiving the evidence, as it tended to corroborate the evidence already before the referee to the effect that proofs had been submitted, and to establish the fact that the defendant had refused to make payment of the claim before the suit was brought.

(4) The circumstances attending the injuries to the horse and the cause of its death were fully detailed in the evidence, and after con-

sidering them, the referee, upon the evidence relating to that sub-
ject found " that such injury to said horse was caused by negligence
of the president, managers and company of the Delaware & Hud-
son Canal Co., and without any neglect or carelessness on the part
of the said John T. Brooks, who was driving said horse at the time
of said injury ; that at the same time the harness and wagon of
said Brooks were broken and injured by the negligence of said com-
pany."    We think the evidence warranted the finding made by the
referee ; it being a question of fact, upon which there was some
evidence, we are not disposed to disturb the conclusion reached by
the referee in that regard.    Nor are we inclined to hold that the
fact that Brooks presented a claim to the railroad company for
damages sustained by reason of its negligence in injuring his
horse, harness and wagon, and gave a release to the railroad therefor,
furnishes a defense to the defendant.    It had issued its certificate
of indemnity, entered into a contract to pay in case of the death of
the horse, if not " caused by willful neglect or carelessness," and
as the injury and death of the horse were caused without the negli-
gence or carelessness of plaintiff or Brooks, the obligation of the
defendant assumed in its certificate, so held by the plaintiff at the
time of the death of the horse, should be enforced against the
defendant.    It does not appear from the evidence that the plaintiff
aided Brooks in presenting his claim to the railroad company, or in
obtaining a settlement with it for the damages which he had sus-
tained, or in any way consented to a discharge of the mortgage
which he held against the property, or to a liquidation of the certifi-
cate which was collateral thereto, and in our opinion the evidence
fails to establish any ground upon which the plaintiff should be pre-
vented from a recovery upon the contract entered into by the
defendant and held by the plaintiff at the time of the death of the
horse.    (*Hathaway* v. *Orient Ins. Co.*, 134 N. Y. 409 ; *Kellogg* v.
*N. Y. C. & H. R. R. R. Co.*, 79 id. 77 ; *Winne* v. *Niagara Falls
Ins. Co.*, 91 id. 192 ; *Dakin* v. *Globe Ins. Co.*, 77 id. 600.)    It is
apparent from the pleadings and from the evidence, as well as from
the findings of the referee, that the defendant had notice of the assign-
ment of the certificate to the plaintiff and all his interest therein
prior to the death of the horse, and it appears that no act of the
plaintiff has occurred which should deprive him of the interest.

acquired by him in the certificate. After the assignment the obligation of the defendant ran to the plaintiff, and he cannot be deprived of his interest in the certificate of insurance without his consent. (*Cromwell* v. *Brooklyn Ins. Co.*, 44 N. Y. 42.)

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.