BROWN-BRAND REALTY COMPANY, INC., Plaintiff, *v.* SAKS & COMPANY, Defendant.

Supreme Court, New York County, January, 1926.

Easements — light, air and view — action for injunction and damages — metal awning so erected on level with second story plate glass show window of defendant's premises as to obstruct public view therein — abutting owner may not be deprived of light, air and view without payment of compensation — maintenance of structure not justified by erection pursuant to permit granted by city of New York — fact that plaintiff waited until completion of structure not laches — plaintiff entitled to injunction and damages.

An abutting owner has easements of light, air and view that may be adjudicated as valuable property rights, and he may not be deprived of them without payment of just compensation. Interference with said rights, which injure the rental value of property, may be enjoined.

Accordingly, plaintiff, owner of premises abutting defendant's property, is entitled to an injunction restraining said defendant from maintaining a marquise, more commonly regarded as a metal awning, so located upon defendant's building as to be approximately on a level with the center of a plate glass show window of the second floor of plaintiff's building, with the result that it obstructs the

public view of the show window constructed particularly for show purposes, and causes substantial damages to the premises in so far as the rental value of the second floor is concerned.

Plaintiff is also entitled to the sum of $1,500 to cover the depreciation in rental value of the second floor of its premises, which owing to the presence of the marquise, have been vacant for about two years.

The maintenance of the marquise cannot be justified by reason of the fact that it was erected and maintained pursuant to a municipal permit in accordance with plans approved by the building department of the city of New York. The fact that there are other structures of a similar character maintained throughout the city of New York under the authority of the municipality is not a sufficient reason for denying relief to the plaintiff.

The plaintiff is not guilty of laches by reason of the fact that it did not commence an action until four months after the completion of the marquise, since, until the completion of the structure, plaintiff was not in a position to ascertain the amount of interference that would result therefrom.

ACTION for an injunction and for damages.

*Wing & Wing* [*Arthur K. Wing* and *James G. Purdy* of counsel], for the plaintiff.

*Chadbourne, Stanchfield & Levy* [*Max D. Steuer* and *J. Arthur Leve* of counsel], for the defendant.

JAMES O'MALLEY, J. This is an action for an injunction restraining the defendant, Saks & Company, the lessee of the building on the northeasterly corner of Fifth avenue and East Forty-ninth street, from maintaining a marquise, located on the south side and at the easterly end of said building, and about one foot from the building line of plaintiff's property, and to recover damages thus far inflicted. The plaintiff's building, which is approximately two hundred feet east of Fifth avenue, has a street frontage of twenty-two feet. It is a former private residence now converted into business lofts on each of the four floors. The basis of plaintiff's claim is that the marquise interferes with the light and view appurtenant to its premises.

Respecting the character of the structure complained of there is little or no dispute. It is what is commonly regarded as a metal awning. Its easterly end is one foot, one inch from the building line. Its vertical section at the easterly end is one foot, eleven inches in thickness. It is thirty feet, ten inches long, from east to west, and thirteen feet wide from north to south. It thus covers all but two feet of the full width of the sidewalk. At the building line it is twelve feet, two inches above the sidewalk, and at the outer or southerly edge thirteen feet, two inches. As thus constructed it is approximately on a level with the center of a plate glass show window on the second floor of plaintiff's building.

22

It is located directly over a freight entrance used exclusively by the defendant for its own convenience in receiving merchandise into the premises.

Another similar marquise is located midway of the building over the public entrance into the store. No complaint in respect thereto is made, however, as it is a considerable distance to the west of the plaintiff's property.

Concededly the erection of the marquise was authorized by the municipal authorities, and was constructed in accordance with plans approved by the building department, pursuant to the provisions of section 170, subdivision 4, paragraph a, of the Building Code of the city of New York.

Before discussing the legal principles applicable, I desire first to give my view of the evidence, and my conclusions with respect to what it has established.

Upon the trial it was expressly consented that the trial justice might visit and view the premises for the purpose of ascertaining to what extent, if any, the structure complained of interferes with the view by the public of the plaintiff's premises. Since the trial I have taken occasion to make such inspection. The result, considered in connection with the evidence presented upon the trial, convinces me that the marquise seriously obstructs the view of the show window on the second, or parlor floor. A person who walks along the southerly side of Forty-ninth street from the point of its intersection with Fifth avenue, is unable to see the upper half of the window and fails to secure a full and unobstructed view thereof until a point almost directly opposite the plaintiff's premises is reached. The evidence adduced is ample to justify this conclusion, and I am clearly of the opinion that the structure inflicts substantial damage to the plaintiff's premises, in so far as the rental value of the parlor floor is concerned.

An elaborate show window has been constructed on this parlor floor and the plaintiff's evidence tends to establish that show windows of this character are now quite commonly used in the retail trade for display purposes. The bottom of the window is only eight feet above the sidewalk and special advantage is claimed by the plaintiff to accrue by reason of the relative proximity of the window to the sidewalk.

The evidence is sufficient to satisfy me that a view of a sign extending out from the building at the point in question could not be had. And while a painted sign on the window proper might not readily be discernible by persons passing in a northerly direction on the east side of Fifth avenue, nevertheless such sign could be read by persons on the southerly side of Forty-ninth street who

have passed a short distance to the east of Fifth avenue. On the other hand, goods of certain character attractively displayed could readily be seen from Fifth avenue, and so arranged as to attract attention to the character of the business carried on.

Plaintiff's evidence also tends to establish that the view of Fifth avenue from within the store is also shut off, but I regard this of less consequence than the obstruction of the view of the window from without. Nor am I much impressed with the plaintiff's claim that the light of the show window of the ground floor is materially interfered with. While it is true, according to its evidence, that in the late afternoon the sun casts the shadow of the marquise on the window, I am not convinced that any material damage results therefrom.

While it is true, as defendant claims, that a full view of the window may be had by pedestrians and those employing vehicles who pass westerly from Madison avenue toward Fifth avenue, and that there is little or no interference with the view of those who pass easterly from Fifth avenue along the northerly side of the street, nevertheless, the most advantageous view of the window is from the southerly side of Forty-ninth street from the direction of Fifth avenue. And it is from this direction that the greatest interference comes. The plaintiff is entitled to the benefit which may accrue to it from the public having a full and unobstructed view of the window from the point in question.

It is well settled in this State that plaintiff as abutting owner has easements of light, air and access which are valuable property rights, and of which it may not be deprived without payment of just compensation. (*Story* v. *New York Elevated R. R. Co.*, 90 N. Y. 122; *Lahr* v. *Metropolitan Elevated R. Co.*, 104 id. 268.) The right of prospect or view has also been included (*Hallock* v. *Scheyer*, 33 Hun, 111; *Bradley* v. *Degnon Contr. Co.*, 224 N. Y. 60, 72), and has long been recognized generally in other jurisdictions, and interference therewith which injures rental value has frequently been enjoined. (*First National Bank* v. *Tyson*, 133 Ala. 459; *Anisfield Co.* v. *Grossman & Co.*, 98 Ill. App. 180; *Field* v. *Barling*, 149 Ill. 556; *Dill* v. *Board of Education*, 47 N. J. Eq. 421.)

Nor can the maintenance of the structure be justified though erected and maintained under municipal permit if it in fact constitutes a public nuisance injurious to the plaintiff. While it is true that the city is vested with the power of control over its streets and may, in the public interest, authorize structures which otherwise would be nuisances, it is without power to authorize a structure which is in fact a public nuisance affecting a private right. (*Ackerman* v. *True*, 175 N. Y. 353; *McMillan* v. *Klaw & Erlanger Co.*,

107 App. Div. 407; *Bradley* v. *Degnon Contr. Co., supra; Broadbelt* v. *Loew,* 15 App. Div. 343, 346; affd., 162 N. Y. 642; *Matter of Kahabka* v. *Schwab,* 205 App. Div. 368.) Here, it is to be noted that the structure complained of is used solely for private purposes and convenience, and the public has no interest therein, as it might have perhaps in the structure over the public entrance maintained by defendant.

Because there are numerous other structures of a similar character maintained throughout the city under like authority from the municipality, and that other actions may be brought to enjoin their maintenance, is not sufficient reason for denying relief to the plaintiff. For all that appears such similar structures may exist without inflicting injury upon any person. Each case must be determined upon the special facts and circumstances surrounding it, and it must be assumed that a person claiming to be aggrieved will be required to establish, by clear and convincing proof, as I feel has been done in this case, that private rights have been injuriously affected.

The claim that the plaintiff has been guilty of laches cannot be sustained. The erection of the marquise was begun in July, 1923, but was not completed until May, 1924. In September, 1924, the plaintiff instituted litigation for the purpose of enforcing its rights. Until the structure was finally completed the plaintiff was not in a position to determine the exact amount of interference that would result.

Moreover, as already appears, plaintiff's easements of light, air, access and view are real property and the right to impair or destroy such right could only be acquired by prescription by adverse user for twenty years. (*Ackerman* v. *True, supra.*)

It appears that the second or parlor floor of the plaintiff's premises has been vacant about one year and ten months. It is difficult to determine, however, whether the vacancy during this time was due to the presence of the marquise. Nevertheless, if during this period there has been a depreciation in rental value, as the evidence tends to show, it would seem that the plaintiff should be entitled to compensation for the same. My judgment is that $1,500 is a sufficient sum as such compensation.

In addition to this sum allowed as damages, the defendant will be enjoined from further maintenance of the marquise. Submit decision and decree in accordance herewith.