WILLIAM C. ANDREWS and Another, Plaintiffs, *v.* ANDREW J. PERRY and Others, Defendants.

Supreme Court, Onondaga County, May 8, 1926.

Nuisance — action to restrain maintenance of refreshment stand in strictly residential district in city of Syracuse — fact that stand collects crowds late at night which disturb and annoy neighborhood and cooking of food gives off discomforting odors, constitutes nuisance — plaintiffs not barred from relief because conditions did not force them from their homes — injunction granted — plaintiffs entitled to nominal damages.

The use of property for business or other purposes in such a manner as to unduly vex and trouble those living in the neighborhood by the pollution of the air with disagreeable vapors or odors or by an undue amount of noise which disturbs the quiet and otherwise tranquil neighborhood or annoys and disturbs nearby dwellers so as to make their life uncomfortable, constitutes a nuisance and such a use is not justified by any right of property.

Accordingly, plaintiffs, whose property adjoins the defendants, are entitled to an injunction restraining the defendants from maintaining a one-story refreshment booth commonly called a " hot dog " stand, since it appears that the stand, which is kept open until midnight, attracts many patrons who overrun plaintiffs' property, trample down the grass, throw papers and refuse on the lawns and surrounding property, engage in loud and boisterous talk late at night, and disturb the rest and sleep of the plaintiffs and other residents of that locality, and that the cooking from said stand throws off an odor which permeates the neighborhood and is blown by the wind across plaintiffs' porches and into their houses to their discomfort and annoyance; the fact that this annoyance was intermittent does not affect plaintiffs' right to protection, particularly where the fumes are so offensive as to interfere with the comfort and enjoyment of plaintiffs' homes.

The fact that plaintiffs were not driven from their dwellings, notwithstanding the annoyance, does not preclude them from seeking relief; it is enough if the reasonable enjoyment of their property has been rendered uncomfortable by the use to which the defendants have put their property. Nor are plaintiffs estopped from recovery because they purchased their property long after the stand was erected and with full knowledge of its use.

Nor have the defendants an equity in their business sufficient to warrant the court in refusing to restrain the further offensive operation of the stand, since they

have invested only a small amount of money in the business and the building occupies only a small portion of the lot.

In the absence of any evidence showing that the plaintiffs' property actually depreciated in rental value, plaintiffs' award for damages must be nominal and it is fixed at one dollar.

ACTION to enjoin maintenance of nuisance.

*Brewster, Herzog & Jillson,* for the plaintiffs.

*Geo. C. Cool* and *W. J. McClusky,* for the defendants Perry.

EDGCOMB, J.  Plaintiffs and defendants Perry are neighbors, living side by side on Arlington avenue in the city of Syracuse. Several years ago Mr. Perry, with the consent of his wife Minnie Perry, constructed near the sidewalk on the latter's property, a small one-story refreshment booth, known in modern parlance as a " hot dog " stand, where he has since dispensed " hot dogs," ice cream cones, candy, pop corn, cracker jack, soft drinks, and other viands.

The plaintiffs seriously object to this stand, and allege that its operation causes them much annoyance and discomfort, and materially interferes with the reasonable enjoyment of their home, and in fact constitutes a nuisance, and they ask that its further operation be enjoined.

While ordinarily one can use his property for his own advantage as he sees fit without the advice or interference of his neighbor, there is a limitation to such rule.  The old and familiar maxim that one must so use his own as not to injure another's property (*sic utere tuo ut alienum non lœdas*) has long existed.  This principle was aptly stated by ANDREWS, Ch. J., in *Booth* v. *R., W. & O. T. R. R. Co.* (140 N. Y. 267, 274) as follows: " The general rule that no one has absolute freedom in the use of his property, but is restrained by the coexistence of equal rights in his neighbor to the use of his property, so that each in exercising his right must do no act which causes injury to his neighbor, is so well understood, is so universally recognized, and stands so impregnably in the necessities of the social state, that its vindication by argument would be superfluous.  The maxim which embodies it is sometimes loosely interpreted as forbidding all use by one of his own property, which annoys or disturbs his neighbor in the enjoyment of his property.  The real meaning of the rule is that one may not use his own property to the injury of any legal right of another."

The wisdom and justice of the above formula to which one's conduct must be conformed is more apparent in our complex and changing civilization of to-day, when our population is being huddled more and more into congested centers, than it was in 1893 when the opinion in the *Booth* case was written.  One cannot live to

21

himself alone in this world. He is bound to respect the rights of others. If he is not willing to do so voluntarily, he must be made to do so.

The stand, as well as the business conducted at this spot, is not, in and of itself, unlawful. Therefore, if it is to be declared a nuisance it must be because the structure is located in an inappropriate place, or the business is conducted in an improper manner. What would be deemed a nuisance in one locality would be a welcome diversion in another. A situation which would cause little or no annoyance in a business, manufacturing or tenement district might be extremely vexatious to people residing in a restricted and beautiful residential section.

Arlington avenue is situated on the edge of Onondaga Park in a strictly residential district. The park is one of the beauty spots of the city. In such a section as this, removed from the turmoil of business, one would hardly pick a " hot dog " stand as an attractive adjunct to the locality, or a structure which would add to the value of the adjoining property.

But it is the nature of the business and the manner in which it has been conducted, rather than the building itself, of which the plaintiffs complain.

The booth is too small to accommodate defendants' customers inside. They are compelled to stand outside or retire to their cars or to the surrounding lawns to devour their purchases. The booth is kept open until midnight or later on warm summer evenings, and the evidence shows that many of the patrons overrun plaintiffs' property, trample down their grass, throw papers and refuse on their lawn and the surrounding property, park their cars along the street and block the driveway into various residences, sing, play musical instruments and engage in loud and boisterous talk late at night, and disturb the rest and sleep of the plaintiffs and other residents of that locality. The odor from the sausages which are cooked at the stand permeates the neighborhood, and is blown, whenever the wind is in the right direction, across plaintiffs' porch and into their house, to their discomfort and annoyance. The food attracts flies and insects, which do not confine their activities to the counter, but force their unwelcome presence on the plaintiffs.

It is true that defendants swore a number of witnesses who testified that they were occasional visitors to defendants' place of business, and that they never saw any of these objectionable features above narrated. But their testimony is largely in the nature of negative testimony, and does not in my opinion overcome the positive evidence of the plaintiffs as to the objectionable features of the business.

The question to be decided here is whether such a state of facts constitutes a private nuisance, and warrants a court of equity in enjoining its further repetition.

There is no hard and fast rule as to just what constitutes a nuisance. Each case must depend upon the peculiar circumstances and surroundings which are present, the nature of the business, and the kind and extent of the annoyance. Whether the things complained of constitute a nuisance or not is a question of fact to be decided on the evidence in each case. (*Roscoe Lumber Co.* v. *Standard Silica Co.*, 62 App. Div. 421.)

It is not every vexatious interference connected with business which will be enjoined. If one chooses to live in a congested center and thus enjoy the many advantages of community life, he must expect to experience some of the resulting unpleasantness.

Mere inconvenience resulting from the exercise of trade will not warrant a court stepping in and restraining such business upon the ground that it constitutes a nuisance. One cannot live in a city and escape all noise, dirt, smoke, confusion and disagreeable odors. A lawful business will not be enjoined because it cannot be carried on without some slight degree of inconvenience or irritation to those residing in that vicinity.

But when the use to which one puts his premises works legal damage to his neighbor by unlawfully disturbing him in the reasonable enjoyment of his own property, such use constitutes a nuisance and transgresses what would otherwise be rightful freedom to use one's property as he sees fit.

The courts of this and other States have repeatedly held that the use of property for business or other purposes in such a manner as to unduly vex and trouble those living in the neighborhood by polluting the air with disagreeable or noxious gases, vapors or odors, or by an undue amount of noise which disturbs the peace and quiet of an otherwise tranquil district, or by causing the vibration of adjoining buildings, or by depositing dirt, soot or refuse on contiguous property, or by otherwise annoying and disturbing nearby dwellers and making their life uncomfortable, constitutes a nuisance and such a use is not justified by any right of property. The following are a few of such decisions.

In *Campbell* v. *Seaman* (63 N. Y. 568) the use of defendant's property for the purpose of manufacturing brick, in the course of which noxious gases were generated and blown upon adjacent lands, injuring and destroying trees and plants, was declared to be a nuisance and was restrained by an injunction.

In *Bohan* v. *Port Jervis G. L. Co.* (122 N. Y. 18) the odors from defendant's gas works contaminated the air and interfered with

plaintiff's enjoyment of her property. Judgment for the plaintiff was affirmed.

In *Rosenheimer* v. *Standard Gas Light Co.* (36 App. Div. 1) it was held that a corporation engaged in the manufacture of gas is liable to the owner of adjacent property where heavy smoke and noxious fumes from the plant were wafted by the wind onto plaintiff's property.

In *Catlin* v. *Patterson* (10 N. Y. St. Repr. 724) the defendant was held guilty of maintaining a nuisance because smoke, soot, dust and offensive smells from his factory were blown by the winds onto plaintiff's adjoining property, to his very great discomfort.

In *Cropsey* v. *Murphy* (1 Hilt. 126) it was held that a fat boiling establishment which caused the air to be permeated with disagreeable odors was a nuisance.

In *Mulligan* v. *Elias* (12 Abb. Pr. [N. S.] 259) the operation of a factory which emitted sulphurous gas which was occasionally blown by the wind onto plaintiff's premises, compelling him to close his windows, and irritating and inflaming the throats of those who breathed the gas, was declared to be a nuisance which should be enjoined.

In *Beir* v. *Cooke* (37 Hun, 38) smoke, dust and soot from defendant's factory were carried over to plaintiff's property, and settled on the windows and clothing hung in the yard to dry. Held, that plaintiff was entitled to an injunction restraining such use of defendant's property.

In *Cooper* v. *Randall* (53 Ill. 24) large quantities of chaff, dust and dirt were blown from defendant's flour mill into plaintiff's adjoining house, interfering with the comfortable enjoyment of such habitation. Held, that defendant was maintaining a nuisance.

In *Whitney* v. *Bartholomew* (21 Conn. 213) it was held that the use of one's property in such a manner as to allow cinders, ashes and smoke from a factory to be carried onto the adjoining property to the great discomfort of the occupants of the house constituted a nuisance.

In *Meigs* v. *Lister* (23 N. J. Eq. 199) an establishment for drying bones and other animal refuse, from which unpleasant and sickening odors were carried by the wind into plaintiff's dwelling and polluted the air, was declared a nuisance.

In *Rodenhausen* v. *Craven* (141 Penn. St. 546) defendant was enjoined from maintaining a carpet cleaning establishment and stable connected therewith upon a city street in a residential district, because it rendered the adjoining dwelling uncomfortable by reason of the noise, stench and dust emitted therefrom.

In *Fish* v. *Dodge* (4 Den. 311) defendant was engaged in the

manufacture of steam boilers, which was accompanied with much noise, and a large amount of dust which permeated plaintiff's house next door and settled on the furniture and prevented the opening of the windows and the hanging of clothes in the yard. Held, that the use of defendant's property in such a manner constituted a nuisance.

In *Wylie* v. *Elwood* (134 Ill. 281) it was held that a coal shed erected in a thickly settled residential section of the city constituted a nuisance because of the accompanying noise and dust.

In *Olmsted* v. *Rich* (6 N. Y. Supp. 826) the late General Term in the Fourth Department held that the defendant should be enjoined from maintaining bee hives in an open lot adjoining plaintiff's premises, because the bees annoyed the plaintiff, and interfered with the comfortable enjoyment of his property.

In *Davis* v. *Sawyer* (133 Mass. 289) the ringing of a bell at an early hour in the morning to arouse the employees of a mill, but which awakened other people sleeping in nearby residences and deprived them of their sleep during the hours usually devoted to that enjoyable state, was held to be a nuisance.

Sunday ball games, which called large and boisterous crowds to grounds adjoining plaintiff's property, so that they overran plaintiff's grounds and caused the adjoining property owners great annoyance were declared to be a nuisance in *Seastream* v. *New Jersey Exhibition Co.* (67 N. J. Eq. 178); *Gilbough* v. *West Side Amusement Co.* (64 id. 27) and *Cronin* v. *Bloemecke* (58 id. 313).

A case of nuisance was established by the collection of a crowd on the highways in the neighborhood of one's property to the annoyance of one's neighbors in *Walker* v. *Brewster* (L. R. 5 Eq. Cas. 25) and *The King* v. *Moore* (3 Barn. & Ald. 184).

In *Brill* v. *Flagler* (23 Wend. 354) it was held that one may lawfully kill another's dog when the animal was in the habit of haunting his house and disturbing the peace and quiet of the neighborhood by barking and howling, provided the dog could not otherwise be quieted.

In *Brown-Brand Realty Co.* v. *Saks & Co.* (126 Misc. 336) Mr. Justice O'MALLEY restrained the defendant from maintaining a marquise over the freight entrance of its building, because the structure interfered with a proper view of an elaborate show window of the plaintiff.

The above authorities are ample to uphold a finding that the stand in the instant case constitutes a nuisance. The combined objectionable features, the crowds which collect at this point late at night and disturb the quiet of the neighborhood and interfere with the slumber of the plaintiffs and others at a time when they

have a right to retire for the night, the unsightly refuse thrown about, the disagreeable odors from the cooking sausage, which pollute the atmosphere and invade plaintiffs' house, all unite to annoy and vex the plaintiffs and to interfere with the ordinary comfort and enjoyment of their home.

The fact that this annoyance was intermittent and not constant does not affect plaintiffs' right to protection. (*Campbell* v. *Seaman, supra; Mulligan* v. *Elias, supra; Meigs* v. *Lister, supra.*)

To constitute a nuisance vapors and odors do not necessarily have to be injurious to one's health. It is sufficient if the fumes are so offensive as to interfere with the comfortable enjoyment of one's home. (*Mulligan* v. *Elias, supra; Meigs* v. *Lister, supra.*)

It is urged that the plaintiffs were not driven from their dwelling, but have continued to live in their house, notwithstanding all their alleged annoyance. Such fact does not deprive them of the relief they seek. It is enough if the reasonable enjoyment of their property has been rendered uncomfortable by the use to which the defendants have put their property. (*Bohan* v. *Port Jervis G. L. Co., supra; Roscoe Lumber Co.* v. *Standard Silica Co., supra.*)

The defendants insist that the plaintiffs are estopped from recovery, because they purchased their property long after the stand was erected, and with full knowledge of its use. Such fact does not affect plaintiffs' right to an injunction. (*Campbell* v. *Seaman, supra; Mulligan* v. *Elias, supra.*)

An injunction does not necessarily follow in all cases where a nuisance exists. The equities of the parties must be considered. In this case, however, I do not think that the defendants have any equity sufficient to warrant the court in refusing to enjoin the further offensive operation of this stand. It is not a case where the defendants have invested a large amount of money in a manufacturing plant, which would be lost in the event that operation was prohibited. Defendants have put only a small amount of money in this plant. The building occupies but a small part of the lot. For their own personal gain they have invaded a strictly residential district with a business which is offensive to the entire neighborhood. I think that the equities are with the plaintiffs and the other sufferers in that locality. There is no crying demand for a refreshment stand at this spot. There is another in the park which can easily supply all the urgent needs of the public, and which is so far removed from any residence that it loses most of its objectionable features.

This brings us to the question as to what damages the plaintiffs are entitled to recover because of the maintenance of this nuisance to date. The rule of damages in a case of this kind is the difference

in the rental value of plaintiffs' property free from the effects of and subsequent to the nuisance. (*Francis* v. *Schoellkopf,* 53 N. Y. 152; *McKeon* v. *See,* 51 id. 300; *Beir* v. *Cooke, supra; Ruckman* v. *Green,* 9 Hun, 225.)

Plaintiffs reside in one flat and rent the other. While there is some evidence that the existence of the stand has depreciated the rental value of each flat ten dollars a month, it does not appear that plaintiffs have actually lost that sum. I think it must be held that the actual money loss which the plaintiffs have sustained by reason of the maintenance of this nuisance is nominal, and I award one dollar as such damage.

Prepare findings in accordance with this opinion, which, if not agreed upon, may be settled before me upon two days' notice.